*15*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOHN REED | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-104 |
| | § | |
| BANK OF AMERICA, N.A. | § | |

## PLAINTIFF'S RESPONSE TO
## BANK OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Bank of America's motion for summary judgment should be denied because

there are genuine issues of material fact on the following factual issues:

1.     Raul Anaya never gave to John Reed any "performance goals" prior to

Reed's employment with the Bank, as alleged in paragraph 7 of Anaya's affidavit.

See John Reed's deposition, pages 51-52 (for the sake of judicial economy and so

as not to overburden the Court's file with redundant material, Plaintiff incorporates

that copy of John Reed's deposition, consisting of 145 pages, that is attached to

Bank of America's Motion for Summary Judgment as attachment A, into this

response, as if fully set forth verbatim).

2.     John Reed never received a copy of the goals applicable to Client

Managers prior to Reed's employment with the Bank, as inferred in paragraph 8 of

Anaya's affidavit. See John Reed's deposition, pages 51-52.

3.     Any so called "performance goals" whether given to John Reed before

or after he accepted employment at Bank of America, are not part of the two

letters (Exhibits 1 and 2 of Bank of America's Motion for Summary Judgment) that

Bank of America holds so dearly as creating an at-will employment contract; therefore, none of the omitted performance goals could possibly be construed as binding on the parties as part of the employment contract. As argued by Bank of America at page 7 of its motion, "Reed signed that he understood this document (Exhibit 2) and that his employment relationship would 'be governed by these terms, conditions and provisions.' (Ex. 2; Dep. 53:19-54:7.) Reed understood this agreement took the place of any prior agreement. (Dep. 54:11-55:11)". Bank of America cannot have it both ways. Accepting the bank's argument that, *if it is not in the two letters, it is not binding on the bank,* means accepting the premise that nothing outside the two letters is part of the employment agreement between the bank and John Reed. Is the bank arguing that the performance goals, which are not part of either of the two letters, are not binding on the parties? If so, how can those performance goals form the basis of John Reed's termination?

4.    The statements made by Raul Anaya to John Reed regarding conditions of employment were neither "vague" nor "general comments" as alleged in Bank of America's motion at page 1; to the contrary, Raul Anaya's statements concerning marketing strategy and support, product partners and interaction between them, were direct, clear and unambiguous. See Reed's affidavit, attached as Exhibit B. Bank of America, through Raul Anaya, its agent and employee, actively and very aggressively recruited John Reed for the position of Client Manager in early 2000, at a time when John Reed was not seeking employment outside his then-current job at Chase Bank. This recruitment lasted for some time

as described in Mr. Anaya's affidavit (March to April of 2000). During the course of Raul Anaya's vigorous recruitment efforts he made numerous, specific and very clear promises about the marketing strategy and support John Reed would receive from Bank of America product partners. Raul Anaya promised John Reed that Reed "would receive all of the support from Bank of America personnel that I needed to do my job and reach my goals. I was promised that I would be assisted in my calling efforts by various product specialists who would prospect in the Rio Grande Valley and based on their calling efforts and my calling efforts, we would send referrals to each other. I was never given the product specialist support that was promised from product partners who were supposed to actively market the Valley. I was also told that I would be given clients with whom to work. I was given four clients, and only one of those had any future possibility of doing any additional loan business with Bank of America." See John Reed's answers to Bank of America's Interrogatories, Exhibit A. Bank of America had ample opportunity to cross-examine Mr. Reed about these issues, and in fact did so during his deposition. Bank of America cannot succeed in it motion for summary judgment merely by unilaterally categorizing Mr. Reed's statements as "vague". They were not vague or general. See John Reed's affidavit.

5. Even Raul Anaya's affidavit contradicts Bank of America's allegation that Anaya's statements to Reed were vague and general. More specifically, beginning at paragraph number 7 of his affidavit, Anaya states that he "initially spoke to Reed about the Client Manager position in March of 2000"; that he

"subsequently met with Reed in person"; that he "had several telephone conversations with him (Reed)"; and the during these phone conversations he "explained the parameters of the Client Manager position to Reed, including his role, responsibilities and performance goals." At paragraph number 8, Anaya explains that in order to "facilitate Reed's understanding of the Client Manager's expectations and responsibilities, I arranged a meeting between Reed and Larry Zamponi, the other Rio Grande Valley Client Manager." Anaya claims he "also sent John Reed a copy of the goals applicable to Client Managers." At paragraph 9, Anaya describes that in his final meeting with John Reed in April of 2000, he discussed the "employment relationship." In essence, Anaya's affidavit describes at least three meetings between Reed and the folks from Bank of America, several telephone calls, and correspondence describing "performance goals", "responsibilities" and "expectations". All of this communication occurred between March and April of 2000.  It is unfathomable that all of these meetings, telephone calls, correspondence and explanations resulted in, as Bank of America would have this Court believe, only "a vague, pre-employment statement".  Indeed, Bank of America seems to argue that Reed's suit is based on *one* "vague pre-employment statement" by Anaya. *See* page one of Bank of America's **Summary of the Argument**, sentence one, where Bank of America argues that Reed is attempting to turn "*a* vague, pre-employment statement into a contractual obligation." (Emphasis added). Nothing could be further from the truth of Reed's claims. Reed does not attempt to focus on one statement by Anaya, nor does Reed argue or allege that

Bank of America's representations amount to a contractual obligation. To the contrary, Bank of America's many, specific, clear statements about the marketing strategy and support system in place at Bank of America amounted to false representations, false promises, of a future course of action by the bank that Bank of America never intended to keep and/or could not in reality keep.

6.    At this juncture it is important, indeed critical, to note exactly what Bank of America promised to John Reed vis-à-vis the bank's expectations of him. As Anaya points out in his affidavit at paragraph 10, "Reed was expected to book $21,300,000.00 in commercial loans..." for the year 2000. This is a phenomenally aggressive goal, one that Reed would not have undertaken had Raul Anaya and others at Bank of America been truthful with him during the many meetings, telephone conversations, and, discussions. See Reed's affidavit. Indeed, Reed was with the bank only eight (8) months during the year 2000, an almost impossible time period within which to book and close the volume of loans the bank expected of him. It is interesting to note, however, that Reed did bring to the bank a volume of business equal to $24,030,000.00 that the bank (not John Reed) either decided to decline or decided not to pursue. See Exhibit 8 to John Reed's deposition, attached as Exhibit C. John Reed has no quarrel with the legal proposition long held in Texas dealing with at-will employment. But Bank of America confuses an employer's post-employment contract rights (the right to terminate an employee at will) with its pre-contract formation obligation to tell the truth. John Reed's complaint herein surrounds Bank of America's conduct in pursuing a contractual

relationship with him based on false promises of future performance, promises that Bank of America never intended to perform and, John Reed submits, could not perform (the parties have agreed to take the deposition of Raul Anaya, but that deposition has not yet been taken. Therefore, evidence of Bank of America's intention not to perform has not yet been fully developed).

7.    Bank of America agues that John Reed is not entitled to rely on Raul Anaya's "alleged statement to leave a position with Chase and join Bank of America...." Motion for Summary Judgment, page 3. This evidence ignores the undisputed evidence that Mr. Reed did rely on Mr. Anaya's statements, and did quit his job at Chase to work for Bank of America, all based on Raul Anaya's and the bank's false promises of future performance. Mr. Anaya made those statements for one reason and one reason only, to induce Mr. Reed to quit his job with Chase and come to work with Bank of America. The important question here is not whether Bank of America had the right to terminate Mr. Reed "at-will", but rather would John Reed have relied on Bank of America's promises and joined the bank had Bank of America told him the truth about his goals and the total lack of support absolutely necessary to attain Reed's expected goals. The answer to that question is "no." See John Reed's affidavit.

8.    The Statute of Frauds is not applicable to this case. If an agreement may conceivably be performed in one year, the statute of frauds does not apply, no matter how improbable performance within one year may be. *Hardin Associates, Inc. v. Brummett*, 613 S.W.2d 4, 7 (Civ. App.--Texarkana 1980, no

writ). The fact that performance within one year is not required or expected does not bring the contract within the statute of frauds. *Republic Bankers Life Ins. Co. v. Wood*, 792 S.W.2d 768, 776 (Tex. App.--Fort Worth 1990, den.). Because John Reed was an at will employee, his contract of employment could be *fully performed* in less than one year or at any time after one year.  The Statute of Frauds only applies to contracts that *cannot* be *performed* within one year from the date of its creation. For the purpose of the one-year rule, there has always been a distinction in Texas law between the *termination* of a contract and the *performance* of a contract. If a contract can be terminated before it can be fully performed, then the possibility of that event (termination) occurring within one year of the making of the contract would not take the agreement outside the statute of frauds. However, if the contract cannot be fully performed within one year, it falls within the statute of frauds and the statute will bar the oral contract. *Young v. Ward*, 917 S.W.2d 506, 511-512 (Tex. App.--Waco, 1996, no writ).  For an employment contract to be covered by the statute of frauds,  "there must not be the slightest possibility that it can be fully performed within one year. ... It makes no difference how long the parties expect performance to take or how reasonable and accurate those expectations are, if the agreed performance can possibly be completed within a year". *See Keystone Intern, Inc. v. Ingham*, 593 S.W.2d 354, 357 (Civ. App.--Texarkana 1979, no writ). Again, John Reed does not argue that he was not an at will employee; his contention is that he never

would have become an employee of Bank of America at all if Raul Anaya and the bank had not made false promises of future performance.

9.    The National Bank Act is not applicable to this case.  Again, John Reed does not argue that the National Bank Act does not allow a bank to "dismiss such officers...at pleasure...." But this provision of the Act, which by its very terms applies to a bank's rights **after** entering into an employer-employee relationship, does not authorize, condone or promote the making of false and misleading statements of material fact to potential employee recruits **before** employment of the recruit, and certainly does not authorize such statements that the banks have no intention of keeping, and more importantly, no ability to keep.

10.    Under Section 27.01 of the Business and Commerce Code, actionable fraud includes a material, false promise to do an act, made with the intention of not fulfilling it. The promise must be made for the purpose of inducing a person to enter into a contract and must be relied on by that person in entering into the contract. Bus. & Com. C. § 27.01(a)(2). Under the common law, a promise to perform an act in the future is actionable fraud when made with the intention, design, and purpose of deceiving, and with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). The present intention of the promisor not to perform in the future makes the representation a false statement. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 727-728 (Tex. 1982). Thus, entering into a contract with no intention of performing may give rise to an action for fraud. *Crim Truck & Tractor Co. v. Navistar Intern.*

*Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992). Similarly, making a misrepresentation to induce a party to a contract to amend the contract, enter into a new contract, or continue performance under the contract may also be actionable. *Kajima Intern. v. Formosa Plastics Corp.*, 15 S.W.3d 289, 293 (Tex. App.--Corpus Christi 2000, pet. denied). **Of extreme importance here is that, whether a promise was made with the intent to deceive and with no intention of performing, is a question for the trier of fact because it so depends on the credibility of the witnesses and the weight to be given their testimony.** *Green v. Allied Interests, Inc.*, 963 S.W.2d 205, 209 (Tex. App.--Austin 1998, pet. denied). This is another reason why the testimony of Raul Anaya is critical to a complete presentation of Reed's response to the bank's motion for summary judgment. It is already clear that Raul Anaya's testimony as contained in his affidavit is suspect at best, given the bank's heavy reliance in its motion that Anaya's statement (one statement) to Reed was simply "a vague, pre-employment statement." The bank's reliance on this premise is so critical to its argument, in fact, that it is the very first argument made on the very first page, in the very first substantive paragraph, in the very first sentence, of its motion. As is abundantly clear, however, that basic premise is fraught with suspicion once it is seen how Anaya describes the many, many communications he and others with the bank had with Reed prior to Reed accepting employment with the bank. The only conclusion that one can draw from Anaya's affidavit is that, as stated by Reed, Bank of America aggressively pursued and recruited John Reed, and in doing so the bank and its representative, Raul

Anaya, made many, many, specific false statements about the support the bank would provide to its Client Manager, John Reed, if only Reed accepted employment with the bank. The bank, however, never intended to provide the support it promised Reed, and indeed, could not provide such support.

John Reed submits that significant fact issues exist surrounding the nature and character of the statements made by Mr. Anaya and others with Bank of America, Mr. Anaya's credibility, Mr. Reed's reliance on the bank's representations, and the bank's intent and ability to perform the specific promises it made to Mr. Reed. For these reasons, John Reed asks that the Court deny Bank of America's Motion for Summary Judgment, and for such additional relief to which John Reed may show himself justly entitled.

Respectfully submitted,

PÉREZ & PIETTE

By: _____
Frank E. Pérez
State Bar No. 15776540
Federal Id No. 1930
436 Paredes Line Road
Brownsville, Texas 78521
Telephone:  (956) 504-5403
Facsimile:  (956) 504-5991
ATTORNEYS FOR PLAINTIFF
JOHN REED

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of April 2003, a true and correct copy of the foregoing instrument has been served upon counsel of record by the following method:

**VIA FAX: 210-978-7450**
Mr. Michael W. Fox
Haynes & Boone, L.L.P.
112 East Pecan St., Suite 1600
San Antonio, TX 78205-1540



Pérez & Piette

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JOHN REED                      §
                               §
VS.                            §        CIVIL ACTION NO. B-02-104
                               §
BANK OF AMERICA, N.A.          §

### PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:   Defendant Bank of America, N.A.; by and through its attorney of record:

      Mr. Michael W. Fox
      Haynes & Boone, L.L.P.
      112 East Pecan St., Suite 1600
      San Antonio, TX 78205-1540

      COMES NOW, Plaintiff John Reed, and files his Answers to Defendant Bank

of America N.A.'s First Set of Interrogatories pursuant to Rule 197 of the Texas

Rules of Civil Procedure.

                              Respectfully Submitted,
                              PÉREZ & ASSOCIATES

                              By:
                              Frank E. Pérez
                              State Bar No. 15776540
                              436 Paredes Line Road
                              Brownsville, Texas 78521
                              Telephone:  (956) 504-5403
                              Facsimile:   (956) 504-5991
                              ATTORNEYS FOR PLAINTIFF
                              JOHN REED



PLAINTIFF'S
EXHIBIT
A

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of August 2002, a true and correct copy of the foregoing instrument has been served upon counsel of record by the following method:

**VIA FAX: 210-978-7450**
Mr. Michael W. Fox and Laura O'Donnell
Haynes & Boone, L.L.P.
112 East Pecan St., Suite 1600
San Antonio, TX 78205-1540

**Pérez & Associates**

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each and every person with whom you discussed your reason(s) for resigning from Chase Bank or your reason(s) for accepting employment with Defendant and include:

      (a)    The name, address and/or telephone number of the person, if known;
      (b)    The date or approximate date of the conversation(s);
      (c)    Where you were when the conversation(s) occurred; and
      (d)    To the best of your recollection, the substance of the conversation(s).

**ANSWER:**

I have only spoken about this with Christine Reed, my wife.

**INTERROGATORY NO. 2:**

Identify all lawsuits by style, cause number and court, in which you have been a party in the last ten (10) years.

**ANSWER:**

None.

**INTERROGATORY NO. 3:**

Identify each and every false representation by Defendant that you relied on in accepting Defendant's employment offer, including:

      (a)    The date or approximate date of the representation;
      (b)    The person who made the representation;
      (c)    Each and every person who heard the representation;
      (d)    The location at which the representation was made; and
      (e)    To the best of your recollection, the substance or content of the representation.

ANSWER:

(a)     30 to 60 days prior to accepting the job up to and including at the job.
(b)     Raul Anaya.
(c)     I don't know of anyone who heard these representations.
(d)     Antonio's Mexican Food Restaurant and other places.
(e)     My primary job function would be to solicit business on behalf of Bank of America. To do this I would call on customers and prospects. Raul Anaya represented to me that I would receive all of the support from Bank of America personnel that I needed to do my job and reach my goals. I was promised that I would be assisted in my calling efforts by various product specialists who would prospect in the Rio Grande Valley and based on their calling efforts and my calling efforts, we would send referrals to each other. I was never given the product specialist support that was promised from product partners who were supposed to actively market the Valley. I was also told that I would be given clients with whom to work., I was given four clients, and only one of those had any future possibility of doing any additional loan business with Bank of America.

**INTERROGATORY NO. 4:**

Identify, including name, address and telephone number, each person who has knowledge of your allegations in this lawsuit, including a description of that knowledge.

ANSWER:

John Reed, plaintiff
5186 Kensington Lane
Brownsville, TX 78521

Christine Reed, John Reed's wife
5186 Kensington Lane
Brownsville, TX 78521

Frank E. Perez, John Reed's attorney
Pérez & Associates
436 Paredes Line Road
Brownsville, Texas 78521
Telephone:   956-504-5403

Trey Martinez, John Reed's attorney

1201 East Van Buren
Brownsville, Texas 78520
Telephone:  956-546-7159

Eddie Gutierrez, witness
221 East Van Buren
Harlingen, Texas 78551
956-440-2600

Eric Reed, John Reed's brother
Houston, Texas

**INTERROGATORY NO. 5:**

Identify every person, including name, address and phone number, who supervised you during the last five (5) years that you worked at Chase Bank.

**ANSWER:**

Irv Downing
Chase Bank Brownsville
1034 Levee St.
Brownsville, Texas 78520
Telephone:  956-548-6960

**INTERROGATORY NO. 6:**

Identify each current or former BOA employee or officer with whom you have spoken since the last day you worked for BOA, either by telephone or in person, and describe the substance of the conversation you had with each identified person.

**ANSWER:**

I have spoken with Larry Zamponi and Alma Ybarra generally about their families and how work was going.

**INTERROGATORY NO. 7:**

Identify every person or business entity to whom you have made application for employment or contacted about possible employment since you started working for Defendant through trial, including the position you sought, the dates and locations of each application or contact for employment in each position, and whether you were offered a job or work, and the rate of pay offered.

ANSWER:

I sought work from the following companies:
Ivy Arroyo, Quality Data Imaging
495 S. Minnesota
Brownsville, Texas  78521
Sales
Commissions only

Elwyn Herman, Lucky Spin
$6.00 per hour

Convergy's Corp.,
935 N. Expressway
Brownsville, Texas 78520
Calling center
$6.00 per hour

Ronald McDonald House
1720 Treasure Hills Blvd.
Harlingen, Texas
Executive Director

Red River Service Corp.
401 E. Jackson
Harlingen, Texas

Brownsville Medical Center
1040 W. Jefferson
Brownsville, Texas 78520
Marketing and Finance

Valley Baptist Medical Center
2101 Pease
Harlingen, Texas 78550
Various positions, including marketing and insurance

Brownsville Independent School District
1900 Price Rd.
Brownsville, Texas 78521
Director of Insurance and Assistant Director of Purchasing

**INTERROGATORY NO. 8:**

List in reverse chronological order all positions of employment you have held since your termination from Defendant:

<ul style="list-style:none">
<li>(a)    Identifying each employer you have worked for and the dates of employment;</li>
<li>(b)    Stating your job classification, position and rate of pay for each employer; and</li>
<li>(c)    If applicable, describing why you left employment with any employers identified in sub-part (a) above.</li>
</ul>

**ANSWER:**

Currently:
Coastal Banc, ssb
744 SE Elizabeth St.
Brownsville, Texas
Sr. Vice President
$78,000.00 annually

Quality Data Imaging
March 2001 to September 2001
Sales, 10% commission

Convergy's Corp.
935 N. Expressway
Brownsville, Texas 78520
August to September 2001
Sales, $6.00 per hour

Lucky Spin
December 2001
Waiter, $6.00 per hour

**INTERROGATORY NO. 9:**

List the amounts of wages, income or other payments of money you have received since the last day you worked for BOA by identifying the amount and source of each payment received.

**ANSWER:**

See tax returns attached to the request for production.

**INTERROGATORY NO. 10:**

Identify every person or entity with whom you discussed an employment relationship or to whom you applied for employment during the last five (5) years of your employment with Chase Bank, including:

     (a)    The name, address and phone number of the individuals with whom you spoke or had contact;

     (b)    The date or approximate date of the discussion(s);

     (c)    Whether you were offered an employment position; and

     (d)    If you were offered a position, the terms of the offer. ANSWER:

**ANSWER:**

Not applicable.

**INTERROGATORY NO. 11:**

For the last five (5) years and including through the date of the trial of this action, identify all physicians and other health care providers you have consulted for any physical, mental, or emotional illness or injury, including the date you first consulted with each such person, and describe each illness or injury requiring consultation and/or treatment.

**ANSWER:**

Not applicable.

**INTERROGATORY NO. 12:**

Identify each person whom you expect to call as an expert witness at the trial of this case, and, as to each expert so identified, state the subject matter on

which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each and every one of the expert's opinions.

**ANSWER:**

Frank E. Perez, John Reed's attorney
Pérez & Associates
436 Paredes Line Road
Brownsville, Texas 78521
Telephone: 956-504-5403

Trey Martinez, John Reed's attorney
1201 East Van Buren
Brownsville, Texas 78520
Telephone: 956-546-7159

Each may testify on the issue of attorneys fees recoverable as damages.

**INTERROGATORY NO. 13:**

If you are seeking an award of any sum of money, whether by damages or otherwise, state the full amount of money you seek and describe the manner in which the amount was calculated. Your description should include each element of damage or component of recovery that you seek, the amount sought for each element or component, the manner in which each element or component of the calculation was determined, and should identify the source of each number used in the calculation.

**ANSWER:**

I am seeking lost earnings based on actual earnings lost, which will be calculated using income tax returns and other earnings records for the periods before and after I worked at Bank of America. I am seeking lost future earnings based on the difference between the amount I was earning then and the amount I am earning now, for all periods of time the law allows. I am seeking to recover our savings, which we had to use because of Bank of America's breaches and violations. I also had to sell my house. The specific amounts sought for the above-described damages will be supplemented.

I am seeking mental anguish and all other elements of damage recoverable under a cause of action for fraud, in the amounts the jury may find under the facts of the case.

**INTERROGATORY NO. 14:**

For each period of time since the last day you worked for Defendant during which you were unable to work for medical, physical, emotional, or personal reasons, state the beginning and ending dates for each period during which you were unable to work and describe the reason(s) why you were unable to work during that time.

**ANSWER:**

**Not applicable.**



# PÉREZ & ASSOCIATES
### A PROFESSIONAL CORPORATION
### ATTORNEYS AT LAW

FRANK E. PÉREZ
GILBERT M. PIETTE

436 PAREDES LINE RD.
P.O. BOX 3490
BROWNSVILLE, TEXAS 78523-3490
EMAIL: FPEREZ@AOL.COM

TELEPHONE (956) 504-5403
FACSIMILE (956) 504-5991

# Facsimile Transmittal

**To:**        Mr. Michael W. Fox and Laura O'Donnell

**Fax #:**     210-978-7450

**From:**      Frank E. Pérez

**Re:**        *John Reed vs. Bank of America*

**Date:**      August 23, 2002

**Our File No.:** 42453

**Total # of Pages:**  11
(including this page)

Original will follow via:
_____Certified Mail            \_\_**X**\_\_Original Will Not Follow
_____Regular first Class Mail     _____Hand Delivery
_____Overnight Delivery

**COMMENTS:**    Following is Plaintiff's Answers to Defendant's First Set of Interrogatories.

THIS FACSIMILE AND THE INFORMATION IT CONTAINS IS INTENDED TO BE A CONFIDENTIAL COMMUNICATION ONLY TO THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED.  IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US BY TELEPHONE (956) 504-5403 AND RETURN THE ORIGINAL FAX TO THIS OFFICE BY MAIL.  THANK YOU.

## Transmission Report

| | |
|---|---|
| Date/Time | 8-23-02;10:01AM |
| Local ID | 956 5045991 |
| Local Name | PEREZ & ASSOCIATES |
| Company Logo | |

# This document was confirmed.
## (reduced sample and details below)
## Document Size  Letter-S

**PÉREZ & ASSOCIATES**
A Professional Corporation
Attorneys at Law

Frank E. Pérez
Gilbert N. Pérez

438 Paredes Line Rd.
P.O. Box 3490
Brownsville, Texas 78523-3490
Email: FPerez@aol.com

Telephone (956) 504-5403
Facsimile (956) 504-5991

### Facsimile Transmittal

To:        Mr. Michael W. Fox and Laura O'Donnell

Fax #:     210-878-7450

From:      Frank E. Pérez

Re:        *John Reed vs. Bank of America*

Date:      August 23, 2002

Our File No.: 42453

Total # of Pages:  11
(including this page)

Original will follow via:
_____Certified Mail        __X__Original Will Not Follow
_____Regular first Class Mail    _____Hand Delivery
_____Overnight Delivery

COMMENTS:    Following is Plaintiff's Answers to Defendant's First Set of
Interrogatories.

THIS FACSIMILE AND THE INFORMATION IT CONTAINS IS INTENDED TO BE A CONFIDENTIAL
COMMUNICATION ONLY TO THE PERSON OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU
HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US BY TELEPHONE (956) 504-
5403 AND RETURN THE ORIGINAL FAX TO THIS OFFICE BY MAIL. THANK YOU.

Total Pages Scanned  : 11' Total Pages Confirmed : 11'

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 821 | 12109787450 | 8-23-02; 9:58AM | 3'17" | 11/ 11 | EC | | CP 14400 |

** Notes **
EC: Error Correct       RE: Resend          PD: Polled by Remote     MB: Receive to Mailbox
BC: Broadcast Send      MP: Multi-Poll      PG: Polling a Remote     PI: Power Interruption
CP: Completed           RM: Receive to Memory  DR: Document Removed   TM: Terminated by user
LS: Local Scan          LP: Local Print     FO: Forced Output        WT: Waiting Transfer

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN REED | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-104 |
| | § | |
| BANK OF AMERICA, N.A. | § | |

## VERIFICATION

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

Before me the undersigned authority, on this day personally appeared John Reed, who being first duly sworn, deposed and stated as follows:

My name is John Reed. I am the named plaintiff in the above case. I am duly authorized to verify the foregoing Plaintiff's Answers to Defendant's First Set of Interrogatories and I have read the same answers. The answers provided are true and correct to the best of my personal knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN REED

SWORN TO AND SUBSCRIBED BEFORE ME on this the 28th day of August, 2002.

**MARIA D. FLORES**
Notary Public, State of Texas
My Commission Expires
August 12, 2004

_____
Notary Public in and for the
State of Texas

## AFFIDAVIT

**STATE OF TEXAS**                              §

**COUNTY OF CAMERON**                     §

Before me, the undersigned Notary Public, on this day personally appeared John Reed, who, after being by me duly identified and sworn, did on his oath depose and say as follows:

"My name is John Reed. I am over the age of eighteen (18) years. I have never been convicted of a crime, and I am fully competent to make this affidavit.

"The following statements are based on my personal knowledge and are true and correct.

"Before I was hired by Bank of America, I had meetings and telephone conversations with Raul Anaya and others at Bank of America, including Larry Zamponi. I was not informed prior to my employment with Bank of America, that I was expected to book $21,300,000.00 in commercial loans, however, I was told very specifically that Bank of America had a system of marketing that involved Client Managers from various branches and services cooperating together to identify, target and market the bank's services to potential bank customers. Mr. Anaya described, in detail, Bank of America's procedures and strategies for marketing that eventually convinced me that I could succeed as a Client Manager with Bank of America.


PLAINTIFF'S EXHIBIT B

"A goal of $21,300,000.00 in actual loan bookings is an extremely aggressive goal, especially in the Rio Grande Valley market.

"It became obvious to me after I was at the bank for a few months that Bank of America did not, in reality, have any sort of aggressive marketing strategy or system in place as Mr. Anaya described, and in fact it appeared to me that Bank of America was reducing its presence in the Rio Grande Valley. If I had been told that Bank of America did not actually have the marketing system and strategy in place that was described to me by Mr. Anaya, I would not have resigned from Chase Bank and gone to work for Bank of America.

"Further affiant sayeth naught."

John Reed

SUBSCRIBED AND SWORN TO BEFORE ME on this the 7th day of April, 2003, to certify which witness my hand and seal of office.

GRISELDA ESCAMILLA
NOTARY PUBLIC
State of Texas
Comm. Exp.08-12-2004

Notary Public, State of Texas

Reed
EXHIBIT NO. 8
Hill & Romero

## Declined

| | | |
|---|---|---|
| 1) | Vailey Trucking | # 5,000,000 |
| 2) | Parker & Co | 1,000,000 |
| 3) | Reyna Family | 3,100,000 |
| 4) | Rio Vailey Canning | 1,000,000 |
| 5) | T P Molding | 1,000,000 |
| 6) | Herr Industrial metals | 207,000 |
| | | # 11,307,000 |

## Approved

| | | |
|---|---|---|
| 1) | Wen Cat | 168,000 |
| 2) | Texgulmarco | 900,000 |
| 3) | Rio Grande Tool | 460,000 |
| 4) | Dr. Kiesel | 500,000 |
| 5) | El Pollo Loco | 900,000 |
| | | # 2,928,000 |

## Pending

| | | |
|---|---|---|
| 1) | Mesquite Plaza | 2,100,000 |
| 2) | Wen Cat | 1,365,000 |
| 3) | Bowling Alley | 3,500,000 |
| 4) | MRI Clinic | 2,000,000 |
| 5) | Herr Industrial | 750,000 |
| | | 9,715,000 |



PLAINTIFF'S EXHIBIT
C

* Derivative Fee Tejon Prop.  $ 25,000 Aprox

* Approved $2,928,000 or 26 % of those Actually decisioned

* Total Deals looked at $24,030,000

# PÉREZ & PIETTE
### A PROFESSIONAL CORPORATION
### ATTORNEYS AND MEDIATORS

FRANK E. PÉREZ

436 PAREDES LINE RD.
P.O. BOX 3490
BROWNSVILLE, TEXAS 78523-3490
EMAIL: FPEREZ@PEREZANDPIETTELAW.COM

TELEPHONE (956) 504-5403
FACSIMILE (956) 504-5991

April 7, 2003

**VIA HAND DELIVERY**
Mr. Michael N. Milby
U.S. District Clerk
U.S. District Courthouse
600 E. Harrison
Brownsville, Texas 78521

Re:     Civil Action No. B-02-104
        *John Reed vs. Bank of America, N.A.*
        In the United States District Court for
        the Southern District of Texas,
        Brownsville Division
        Our File No. 42453

Dear Mr. Milby:

Enclosed for filing is the original and a copy of Plaintiff's Response to Bank of America's Motion for Summary Judgment.

Please file-stamp the extra copy and return in the enclosed self-addressed stamped envelope.

Thank you for your cooperation and assistance in this matter.



Yours very truly,

Frank E. Pérez

FEP/