IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JOHN REED, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL NO.   B-02-104 |
| BANK OF AMERICA, N.A., | § § | |
| Defendant. | § § | |

**DEFENDANT BANK OF AMERICA, N.A.'s MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................1

SUMMARY .....................................................................................................................2

PLAINTIFF'S BURDEN OF PROOF ...............................................................................4

    I.    The trial of this case should be limited to the fraud allegations in Plaintiff's Petition. .............................................................................................................4

    II.    Reed has the burden of showing a "material" misrepresentation. .........................5

    III.    Reed has the burden of showing that any allegedly fraudulent statement was actually false. .........................................................................................................6

    IV.    Reed must prove that Raul Anaya knew that any allegedly fraudulent statement was false. ................................................................................................................7

    V.    Reed must prove that Raul Anaya intended to deceive him. .................................7

    VI.    Reed must prove that he actually relied on the statements on which his case rests. .......................................................................................................................8

    VII.    Reed must show that any reliance on a pre-employment statement by Anaya was justified. .................................................................................................................8

        A.    Reliance on an oral statement made prior to a written agreement is not justified. ............................................................................................................8

        B.    Reed must prove that it was reasonable for a man of his background to rely on the statements he attributes to Anaya. ...................................................11

    VIII.    Reed must show that he was injured as a result of any fraudulent statement. .....11

BANK OF AMERICA'S DEFENSES ..............................................................................12

    I.    Bank of America will establish that Reed ratified or waived any claim that Anaya made fraudulent statements. ..................................................................................12

    II.    Bank of America has established that the National Bank Act preempts Reed's fraudulent inducement claim. .............................................................................12

    III.    Bank of America has established that Reed's claim is barred by the Statute of Frauds. ...............................................................................................................14

OUT OF POCKET DAMAGES ......................................................................................15

CONCLUSION ..............................................................................................................16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN REED, | § | |
| Plaintiff, | § § § | |
| vs. | § § | CIVIL NO. B-02-104 |
| BANK OF AMERICA, N.A., | § § § | |
| Defendant. | § | |

## DEFENDANT BANK OF AMERICA, N.A.'s MEMORANDUM OF LAW

In accordance with Rule 8(B)(2)(a)(2) of the Court's Civil Procedures and subject to its pending Motion for Summary Judgment, Defendant Bank of America, N.A. ("Bank of America" or "Bank") provides this Memorandum of Law to assist the Court with the trial of the lawsuit brought by John Reed ("Reed") against the Bank.

### SUMMARY

In this lawsuit, John Reed alleges that Raul Anaya ("Anaya") fraudulently induced him to join Bank of America based on a promise that he would be provided "support, cooperation and assistance." (Pl.'s Orig. Pet. ¶ III.) To succeed on this claim, John Reed must prove:

(1) Raul Anaya made a "material misrepresentation;"

(2) The representation was false when it was made;

(3) Anaya knew the representation was false when he made it;

(4) Anaya intended that Reed rely and act on the statement;

(5) Reed justifiably relied on Anaya's representation and acted in reliance upon it; and

(6) Reed's reliance caused him injury.

*Clardy Mfg. Co. v. Marine Bus. Loans, Inc.*, 88 F.3d 347, 359 (5th Cir. 1996), *cert. denied*, 519 U.S. 1078 (1997); *Boggan v. Data Sys. Network Corp.*, 969 F.2d 149, 151-52 (5th Cir. 1992); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). At trial, Reed will not be able to carry this burden.

Bank of America has also asserted several affirmative defenses. First, Bank of America has asserted the defenses of ratification and waiver based on the evidence that Reed claims he knew he was not getting the support he was allegedly promised, yet he continued to accept compensation and benefits from the Bank, and because he never complained or protested the alleged lack of support. *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000). The Bank will present evidence at trial that will prove these defenses by a preponderance of the evidence. The Bank has also asserted affirmative defenses based on National Bank Act preemption and the Statute of Frauds. These defenses are both questions of law for the Court. The Bank has established its National Bank Act defense because Reed admits all of the facts necessary to prove application of the Act and claims damages as a result of his termination. *City Nat'l Bank v. Brown*, 599 So. 2d 787, 790 (La. Ct. App.), *writ denied*, 604 So. 2d 999 (1992). The Bank has established its Statute of Frauds defense because Reed claims that the unwritten promises that form the basis of his lawsuit (support, cooperation and assistance) would last for several years. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001).

Finally, based on the nature of his claims in this case, Reed is and should be limited to out-of-pocket damages in this case.

## PLAINTIFF'S BURDEN OF PROOF

**I.   The trial of this case should be limited to the fraud allegations in Plaintiff's Petition.**

Federal Rule of Civil Procedure 9(b) mandates that, in fraud cases, the plaintiff must plead the circumstances constituting the alleged fraud "with particularity." FED. R. CIV. P. 9(b). Because Reed's sole claim in this lawsuit is fraud, he was required to comply with this Rule. In his Original Petition, Reed describes the circumstances supporting his fraud claim as follows: "Defendant knowingly represented to Plaintiff that it would provide to Plaintiff needed and critical support, cooperation and assistance from a variety [of] sources (including branch and office locations outside and within Brownsville, and including Bank officers and employees from branch and office locations outside and within Brownsville)." (Pl.'s Orig. Pet. ¶ II.)

The Fifth Circuit has clearly explained that Federal Rule of Civil Procedure 9(b) requires plaintiffs to specifically plead "the statements contended to be fraudulent . . .." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997); *see also Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002); *American Realty Trust, Inc. v. Bagley*, No. 3:02-CV-0641-G, 2003 WL 158878, at *1 (N.D. Tex. Jan. 16, 2003) (citing *U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206 (E.D. Tex. 1998)(supporting the Fifth Circuit stance that the "simple rule" of pleading particularity is that the "Complaint must contain the 'who, what, when, where and how,' of the false representation.")). As this Court has previously observed, "Rule 9(b) was formulated to ensure that defendants can effectively respond to plaintiffs' allegations, to prevent the filing of baseless complaints to obtain discovery and unknown wrongs, and to protect defendants from unfounded allegations of wrongdoing which might injure their reputations." *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 290-91 (S.D. Tex. 2001)(citations omitted).

In his most recent summary judgment briefs to the Court and his Statement of Contentions in the Joint Pretrial Order, filed after the discovery period had expired, Reed appears to try to assert new fraud claims. Specifically, he is now claiming that there were statements made about marketing, and he appears to allege fraud in the omission based on an assertion that he was not given his goals before he joined the Bank.[1] Because these allegations were not contained in his Original Petition and would confuse and mislead the jury, the Court should exclude them. At trial, Reed should be limited to the specific fraud claims in his Petition and should not be allowed to testify that any other, unpleaded statements are fraudulent. *Becker v. Nat'l Educ. Training Group, Inc.*, No. 3:01-CV-1187-M, 2002 WL 31255021, at *6 (N.D. Tex. Oct. 7, 2002).

## II. Reed has the burden of showing a "material" misrepresentation.

At trial, Reed has the burden of proving that the statements he alleges are fraudulent (as noted previously, those statements should be limited to the specific statements in the Petition) are material misrepresentations. To qualify as a "material" misrepresentation, a statement must assert specific, measurable material facts. *Clardy Mfg. Co.*, 88 F.3d at 359; *American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.—Houston [14th Dist.] 1991, no writ); *see also Becker*, 2002 U.S. Dist. LEXIS 19063, at **21-22 (no misrepresentation where supervisor provided prospective employee with general overview of commission structure but did not explain that commissions were not paid if the employee was terminated before commissions became due). Statements that are merely "puffery" as opposed to concrete, measurable facts do

---

[1] Reed's fraud in the omission claim is not only unsupported by his Petition, the allegations in the Petition suggest that Reed did receive his goals before joining the Bank. Reed alleges, "Plaintiff would not have left his employment with Chase Bank and would not have entered into an employment agreement with Defendant but for said false representations because *the goals set for Plaintiff's employment with Defendant* required the support, cooperation and assistance that Defendant promised but failed to provide." (Pl.'s Orig. Pet. ¶ III.)

not meet the materiality test. *Angelo Broad., Inc. v. Satellite Music Network, Inc.*, 836 S.W.2d 726, 733 (Tex. App.—Dallas 1992, writ denied).

In addition, statements that merely describe the speaker's opinions or intent generally are not considered material representations. *Clardy Mfg. Co.*, 88 F.3d at 359; *Boggan v. Data Sys. Network Corp*, 969 F.2d 149, 154 (5th Cir. 1992); *Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1358 (S.D. Tex. 1994); *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, writ denied). For example, statements about a future working relationship are not statements of present intent. *Giurintano*, 821 S.W.2d at 339. Finally, the Fifth Circuit has held that if an oral statement is followed by a contradictory written agreement, the prior statement cannot serve as a protected "representation" in a fraud case. *Boggan*, 969 F.2d at 153.

Based on his pleadings and his deposition testimony, it is expected that at the trial of this case, Reed will claim that Raul Anaya told him that he would receive support, cooperation and assistance in connection with a future working relationship at Bank of America. However, the evidence will show that Reed signed an agreement, after these alleged statements, that provided he would not rely on any prior oral representations regarding the conditions of his employment. Under the applicable law, it is quite clear that based on these allegations and facts, Reed cannot prove the "material misrepresentation" element of his fraud claim.

### III.    Reed has the burden of showing that any allegedly fraudulent statement was actually false.

Reed must also prove that any statement that he claims was fraudulent was actually false. *Shaboon v. Duncan*, 252 F.3d 722, 735 (5th Cir. 2001); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 480-81 (5th Cir. 2000). At trial, Bank of America intends to offer both Reed's own testimony regarding the "support, cooperation and assistance" that he received from other Bank

employees and present testimony that other employees were both available to and did "support, cooperate and assist" Reed. Therefore, at trial, Reed will not be able to prove falsity. *See, e.g., Becker v. Nat'l Educ. Training Group, Inc.*, No. 3:01-CV-1187-M, 2002 U.S. Dist. LEXIS 19063, at **21-22 (N.D. Tex. Oct. 7, 2002) (finding no misrepresentation where supervisor provided prospective employee with a general overview of commission structure but did not explain all details); *see also Shaboon*, 252 F.3d at 735 (rejecting fraudulent inducement claim in the absence of evidence of falsity); *Hamilton*, 232 F.3d at 480-81 (because company initially gave employee a promised title, there was no misrepresentation).

IV. **Reed must prove that Raul Anaya knew that any allegedly fraudulent statement was false.**

In addition to proving falsity, Reed must prove that, when Raul Anaya made any allegedly fraudulent statement, he knew that his statement was false. *Kansa Reins. Co. v. Congressional Mtg. Corp.*, 20 F.3d 1362, 1375 (5th Cir. 1994). No evidence exists that Raul Anaya made any statement that he knew was false, and John Reed will not be able to carry this burden at trial.

V. **Reed must prove that Raul Anaya intended to deceive him.**

Because Reed contends that Anaya misrepresented the future conditions of his employment and the future acts of third parties, Reed must establish that Anaya made his statement "with the intention, design and purpose of deceiving, and with no intention of performing the act." *Clardy Mfg. Co.*, 88 F.3d at 360 (quoting *Airborne Freight Corp. v. C. R. Lee Enter., Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, writ denied)); *Kansa Reins. Co*, 20 F.3d at 1375-76; *Ehrhardt v. Elect. & Instrumentation Unltd.*, 220 F. Supp. 2d 649, 660 (E.D. Tex. 2002); *see also Paul v. Farmland Indus., Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995) (summary judgment granted on claim that employer

fraudulently represented the length of plaintiff's employment in the absence of evidence that the Company's president did not intend to perform consistently with his words).

No evidence will be presented at trial to show that Raul Anaya had any intent to deceive John Reed. To the contrary, the evidence at trial will show that Anaya wanted Reed to join the Bank and that, when he hired him, Anaya expected that Reed would succeed.

### VI.  Reed must prove that he actually relied on the statements on which his case rests.

To succeed, Reed must also prove that he actually relied on the statements that, in this lawsuit, he claims were false. In other words, Reed must establish that Anaya's statement induced him to leave Chase and join Bank of America. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex. 1996). Based on the previous testimony in this case, it is expected that Reed will not be able to carry this burden at trial.

### VII.  Reed must show that any reliance on a pre-employment statement by Anaya was justified.

Reed has the burden at trial of showing that any reliance on a statement by Anaya was justified. *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1186 (5th Cir. 1993).

#### A.  Reliance on an oral statement made prior to a written agreement is not justified.

It is impossible for a plaintiff to establish justifiable reliance on an oral statement if, after the statement is made, he signs a contrary agreement or an agreement that provides that oral promises are not binding. *See Boggan v. Data Sys. Network Corp.*, 969 F.2d 149, 154 (5th Cir. 1992)(reliance on oral statement made prior to written agreement is misplaced); *Sergeant Oil & Gas Co. v. Nat'l Maint. & Repair, Inc.*, 861 F. Supp. 1351, 1357-58 (S.D. Tex. 1994)(where contract is silent as to subject of oral representation, merger clause bars prior or

contemporaneous oral statements regarding the issue); *C&A Inv., Inc. v. Bonnet Res. Corp.*, 959 S.W.2d 258, 263-64 (Tex. App.—Dallas 1997, writ denied) (contractual agreement not to rely on oral and written statements vitiated any reliance on such statements).

In *Airborne Freight Corp. v. C. R. Lee Enterprises, Inc.*, for example, Airborne Express and an independent contractor entered into a written contract for delivery services. 847 S.W.2d at 297. Their agreement disclaimed any understanding regarding the length of the independent contractor's service. *Id.* Despite this contract clause, Airborne's Regional Manager told the independent contractor that "as long as you do your job, you'll have a job." *Id.* at 292. In response to the independent contractor's fraud claim based on the termination of his contract, the Court observed that the contract language gave clear notice that any oral promise would not control. *Id.* at 297. Thus, the Court held: "The written contract contained ample cautionary language which would preclude exclusive reliance by a reasonable businessperson on verbal statements contradicting the written agreement," and the Regional Manager's broad oral assertion did nothing to alter the contract terms. *Id.*

Similarly, in *Villines v. GMC*, 324 F.3d 948 (8th Cir. 2003), General Motors orally assured the plaintiffs that, if they took exempt positions, they would retain the right to return to hourly positions. *Id.* at 950-51. When they accepted the salaried positions, however, the plaintiffs signed agreements stating that General Motors had the ability to direct their work. *Id.* at 951. By signing these agreements, the employees acknowledged that there were no other oral agreements or understandings regarding the terms of employment. *Id.* The plaintiffs subsequently asked to return to hourly positions. *Id.* When their employer refused the request, they sued for, among other things, fraudulent inducement. *Id.* at 951-52. The Eighth Circuit

upheld summary judgment because the plaintiffs could not have justifiably relied on the oral statements in light of the contradictory written agreements. *Id.* at 953-54.

At trial, Bank of America will offer two written agreements that John Reed signed after he contends that Raul Anaya made the oral statements on which his claim is based. The first is an Offer Letter, which states:

> This letter does not constitute an employment contract, and nothing contained in this letter **or in any other communications you have had with Bank of America representatives should be construed in any way as a guarantee of continued employment** for any period of time, but rather your employment is on an at-will basis. That is, you or Bank of America may end the employment relationship with or without notice or cause. **No officer or representative of Bank of America has any authority to make any agreement, express or implied, which is contrary to the foregoing.**

Bank of America will also introduce a second agreement that Reed signed after the alleged oral statements by Anaya. That agreement states, in part:

> I understand that if I am offered a position with Bank of America, the offer will be for employment on an at-will basis. That is, the employment relationship is not guaranteed for any specific period of time and may be ended by Bank of America or me at any time, with or without notice or cause.

By signing the form, Reed also acknowledged that it "defines the conditions, nature, tenure and duration of [the] employment relationship," that his job duties were subject to change and that:

> In the event I am employed by [Bank of America], **I understand that this document is the complete agreement between the Bank and me, and takes the place of all prior oral and/or written agreements concerning the conditions, nature, tenure and/or duration of my employment** relationship with the Bank. **Any and all such prior oral and/or written agreements, expressed or implied, are invalid**, except any specific provisions set forth in prior written agreements stating my compensation and/or benefits.
>
> Any future changes to the terms and conditions of employment as described in this document must be in writing, signed by a senior officer of the Bank authorized to do so.

> There are **no implied promises, obligations, covenants or guarantees** in connection with this document or **in connection with my employment by the Bank.**

Based on his deposition testimony, Bank of America expects that, at trial, John Reed will testify that he understood these agreements and understood that the Bank could change the conditions of his employment at any time. Reed further admits that he was an at will employee. Yet, Reed claims that he relied on pre-employment statements about the conditions of his future employment. Because he understood, however, that conditions of his employment could change and that no pre-employment statements were binding on the Bank, reliance on any such statement is not, as a matter of law, reasonable.

### B. Reed must prove that it was reasonable for a man of his background to rely on the statements he attributes to Anaya.

In evaluating whether reliance is justified, courts consider an individual's experience, intelligence and ability to determine whether the representation was true or false. *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 369 (5th Cir. 1996); *Beijing Metals*, 993 F.2d at 1186. At trial, the expected testimony will be that Reed is educated and had a long banking background. The testimony will show that Reed understood that banks change the way they do things and understood that there are sometimes difficulties in getting things done. In addition, Reed admits that he was an at-will employee and, therefore, reliance on any promise that depended on future employment is not, as a matter of law, reasonable. Based on this admission and the expected testimony and other evidence presented at trial, Reed will not be able to prove that any reliance on Anaya's alleged pre-employment statement was justified.

### VIII. Reed must show that he was injured as a result of any fraudulent statement.

To prove his claim, Reed must finally establish that the representation on which he relied caused injury. *U.S. ex rel. CMC Steel Fabricators, Inc. v. Harrop Const. Co., Inc.*, 131

F.Supp.2d 882, 888 (S.D. Tex. 2000) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs. and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) and *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994)); *See also Tiemeyer v. Quality Pub., Inc.*, 144 F.Supp.2d 727, 738 (S.D. Tex. 2001)(same). At trial, it is expected that he will not be able to prove this final element.

## BANK OF AMERICA'S DEFENSES

**I.  Bank of America will establish that Reed ratified or waived any claim that Anaya made fraudulent statements.**

Bank of America has asserted, as an affirmative defense, that John Reed ratified any fraud because he continued to accept compensation and benefits from the Bank after he supposedly discovered that the Bank was not providing the support, cooperation and assistance that he contends was promised. (Def.'s Orig. Answer ¶ V.) Bank of America has also asserted a waiver defense because, after Reed joined Bank of America and allegedly learned that he would not received promised support, cooperation or assistance, he did not protest the situation or raise the alleged prior promises to anyone at the Bank. (Def.'s Orig. Answer ¶ VI.) *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000). At trial, Bank of America will present evidence that proves the similar concepts of ratification and waiver by a preponderance of the evidence.

**II.  Bank of America has established that the National Bank Act preempts Reed's fraudulent inducement claim.**

In the Joint Pretrial Order, Reed admits that the National Bank Act provides that a national banking association has the power to elect or appoint officers and to "dismiss such officers . . . at pleasure . . . ." 12 U.S.C. § 24(Fifth). Based on this provision, the Board of Directors may dismiss an officer without liability for breach of an agreement. *Mackey v. Pioneer*

*Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989); *Kemper v. First Nat'l Bank*, 418 N.E.2d 819, 821 (Ill. App. Ct. 1981). The National Bank Act is intended to give national banks "the greatest latitude possible to hire and fire their chief operating officers . . .." *Mackey*, 867 F.2d at 526. Consequently, "[a]n agreement which attempts to circumvent the complete discretion of a national bank's board of directors to terminate an employee at will is void as against public policy." *Mackey*, 867 F.2d at 524; *see also Alfano v. First Nat'l Bank*, 490 N.Y.S.2d 56, 58 (N.Y. App. Div. 1985) (Act preempts all state law and alone governs instances in which bank officers are dismissed). Tort actions are similarly preempted by the National Bank Act. *Mackey*, 867 F.2d at 526 (noting that the effect of allowing tort claims "would be to substitute tort for contract claims, thus subjecting the national bank to all the dangers attendant with dismissing an officer"); *City Nat'l Bank v. Brown*, 599 So. 2d 787, 790 (La. Ct. App.), *writ denied*, 604 So. 2d 999 (1992) (holding that a claim for detrimental reliance was preempted by the National Bank Act); *Ambro v. American Nat'l Bank & Trust Co.*, 394 N.W.2d 46, 49 (Mich. Ct. App. 1986) (holding that contract and tort claims are preempted by National Bank Act).

Courts have consistently held that this statutory provision preempts state law claims relating to a termination, irrespective of the nature of the claim. *Mackey*, 867 F.2d at 526; *Brown*, 599 So. 2d at 790; *Ambro*, 394 N.W.2d at 48-49. In *City National Bank v. Brown*, the plaintiff alleged that he was induced by a Bank to develop a new lending program and that the Bank promised to provide him a sufficient staff to develop the program. 599 So. 2d at 788. Similar to Reed's claim in this case, that plaintiff argued that because he was not given the promised support, he was not successful in developing a lending program and he was terminated. *Id.* (Compare Pl.'s Orig. Pet. ¶ III: "Plaintiff's employment was terminated under the pretense that he was not achieving his stated goals, when . . . Plaintiff . . . did not meet his stated goals

solely due to the failure of Defendant to provide the promised support, cooperation, and assistance.") The plaintiff claimed, as Reed does in his Response, that the National Bank Act did not preclude a claim for detrimental reliance. *Id.* at 790. The court decisively noted that this argument "has no merit," explaining that the National Bank Act "preempts *all* state law and it alone governs in those instances in which officers of national banks are dismissed." *Id.* (emphasis added); *Alfano v. First Nat'l Bank*, 490 N.Y.S.2d at 58 (citation omitted).

Reed admits that Bank of America is a national banking association chartered to do business under the National Bank Act. Reed admits that, when he joined the Bank, Bank of America's Board of Directors appointed him to the "Senior Vice President" officer position with Bank of America. He also admits that the Bank's Board of Directors ratified Reed's termination. To establish fraudulent inducement, Reed must show that he was induced into an agreement that is tied to the promise on which he claims he relied. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In this case, the promise on which Reed claims he relied is a promise for "support, cooperation and assistance," and he claims he was terminated because he did not meet his goals "due to the failure of Defendant to provide the promised support, cooperation and assistance." (Pl.'s Orig. Pet. ¶ III.) He seeks damages based on this dismissal from the Bank. (Pl.'s Orig. Pet. ¶ III.) Therefore, the National Bank Act preempts his claim. *Mackey*, 867 F.2d at 526; *Brown*, 599 So. 2d at 790; *Ambro*, 394 N.W.2d at 49.

### III.  Bank of America has established that Reed's claim is barred by the Statute of Frauds.

Bank of America has also asserted the Statute of Frauds as an affirmative defense to Reed's claim. The Statute of Frauds provides that an agreement which is not to be performed within one year from the date of making the agreement is unenforceable unless in writing. TEX. BUS. & COMM. CODE ANN. § 26.01(b)(6) (West 2002). To establish fraudulent inducement, a

claimant must show that he was induced into reaching an agreement. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). The Statute of Frauds will bar the fraud claim if the claimant seeks to recover the benefit of an agreement that is barred by the Statute. *Id.* at 799.

Consistent with his Petition and his deposition testimony, at trial Reed is expected to testify that he was induced into joining Bank of America in exchange for a promise of support, cooperation and assistance. It is expected that he will claim that he did not meet his goals because he was not given the promised support. He will claim that he was injured because he was terminated as a result of not obtaining this support. Therefore, it is this alleged agreement regarding support on which his claim depends. To avoid the Statute of Frauds, Reed has attempted to argue that the agreement into which he was induced was merely an at-will agreement. Reed, however, does not claim damages based on being an at-will employee. He claims damages because he did not receive allegedly promised support that would have enabled him to meet his goals. With respect to this relevant promise, Reed claims that it was a promise that would last several years. Therefore, his claim falls squarely within the Statute of Frauds' prohibition and is barred. TEX. BUS. & COMM. CODE ANN. § 26.01(b)(6) (West 2002).

## OUT OF POCKET DAMAGES

Texas recognizes two measures of general damages for common law fraud or fraudulent inducement: (1) the "out-of-pocket" measure; and (2) the "benefit of the bargain" measure. *Formosa Plastics v. Presidio Engineers*, 960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure allows recovery of "the *actual injury* suffered measured by the difference between the value of that which he has *parted with*, and the value of that which he has received." *Id.* (emphasis in original). Under Texas law the traditional measure of general damages in common law fraud cases is out-of-pocket damages. *Johnson v. Willis*, 596 S.W.2d 256, 262 (Civ. App. –

Waco 1980, *ref. n.r.e. per curium*, 603 S.W.2d 828 (Tex. 1980). Benefit of bargain damages are available for fraudulent inducement, but only when there is a contract or "bargain" between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 796 (Tex. 2001).

In an attempt to avoid summary judgment on the basis of National Bank Act preemption and the Statute of Frauds, John Reed has denied that he seeks damages based on the breach of any agreement related to support, cooperation and assistance. (Pl.'s Mot. for Partial Summ. J. at pg. 2.) Instead, he asserts the acts and conduct that support his claim all occurred prior to his employment with Bank of America. *Id.* Yet, he seeks damages related to his termination from the Bank. He cannot have it both ways. Although Bank of America respectfully asserts that Reed's termination is an essential part of this case and, therefore, the National Bank Act preempts his claim, if he is able to avoid the National Bank Act and Statute of Frauds by arguing that this case does not relate to his termination, then he should not be allowed to rely on his termination form the Bank to support a damage claim and should, instead, be limited to the out-of-pocket damages incurred when he chose to leave Chase Bank.

## CONCLUSION

Because John Reed's fraudulent inducement claim fails as a matter of law, Bank of America, N.A. respectfully requests that, at the conclusion of Plaintiff's presentation of evidence in this case, the Court grant Defendant's Motion for Judgment as a Matter of Law; or, alternatively, after all evidence in this case has been presented at trial, the Court grant Defendant's Renewed Motion for Judgment as a Matter of Law, and for all other and further relief to which Defendant may be entitled.

Respectfully submitted,

*Laura O'Donnell*

Michael W. Fox
State Bar No. 07335500
Federal ID No. 10300
Laura E. O'Donnell
State Bar No. 00797477
Federal Id. No. 21720
HAYNES AND BOONE, L.L.P.
112 East Pecan Street, Suite 1600
San Antonio, Texas 78205-1540
Telephone: (210) 978-7000
Telecopier: (210) 978-7450

ATTORNEYS FOR DEFENDANT

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been sent to all counsel of record on this 26th day of July, 2003.

*Laura O'Donnell*

Laura O'Donnell

s-130053_2.DOC                     17