IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHN REED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-104 |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Defendant. | § | |

## ORDER

BE IT REMEMBERED, that on July 28, 2003, the Court considered Defendant's Motion for Summary Judgment [Dkt. No. 11], Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 18], and the responses and replies thereto. The Court **GRANTS** Defendant's Motion [Dkt. No. 11], and **DENIES** Plaintiff's Motion [Dkt. No. 18].

### Uncontroverted Factual and Procedural Background

Plaintiff John Reed brings a claim for fraudulent inducement against Defendant Bank of America for alleged statements made by Raul Anaya in the course of the Bank's recruitment of Reed for the position of client manager. Plaintiff alleges Bank of America induced him to leave his previous employment with promises of certain future job conditions. The parties agree that Plaintiff was an at-will employee for Bank of America.[1] This suit, therefore, is not based on a breach of contract claim, and Plaintiff does not contest the reasons for his termination. Plaintiff was employed by Chase

---

[1]Defendants do not argue that an at-will employee cannot maintain an action for fraudulent inducement into employment. See, e.g., Franz v. Lolab, Inc., 801 F. Supp. 1537, 1542 (E.D. La. 1992) (citing cases and explaining a majority of courts hold fraudulent inducement is a viable claim even when the plaintiff is an at-will employee). Cf. Formosa Plastics Corp., U.S.A. v. Presidio Engineers & Contractors, 960 S.W.2d 41, 47 (Tex. 1998) (fraudulent inducement involves "[a]n independent legal duty, separate from the existence of the contract itself, [which] precludes the use of fraud to induce a binding agreement.").

Bank and its predecessor for 15 years. While working for Chase, Reed specialized in commercial lending. During the course of Reed's tenure at Chase he was promoted multiple times until he held the title of Senior Vice President. Reed remained in this position until he resigned from Chase. See Def's Motion, Ex. A, pp. 100-106. In March 2000, a client manager position at Bank of America in the Rio Grande Valley became vacant. "Client managers are primarily responsible for identifying and acquiring high dollar commercial lending relationships for the Bank." Id., Ex. C, ¶ 3 (Raul Anaya's Affidavit). Bank of America identified John Reed as one prospective candidate for the position of client manager. Raul Anaya, a Commercial Banking Market Executive who supervised Bank of America's client managers, first approached Reed about the position in March 2000.

Reed alleged in his complaint that during the recruitment process Raul Anaya "knowingly represented to Plaintiff that [the Bank] would provide to Plaintiff needed and critical support, cooperation, and assistance from a variety of sources." Pl's Original Petition, ¶ 2.[2] Plaintiff, in subsequent responses and deposition testimony claimed that Anaya told Reed that the Bank had marketing strategy procedures and support systems in place, which included the utilization of product partners, that would "assure" that Reed as a client manager met his employment goals. Reed contends that he quit his job with Chase Bank because he relied on Anaya's alleged representations, and had Anaya indicated that support would not be forthcoming, Reed would not have left his job with Chase Bank.

After several conversations between Anaya and Reed, Bank of America offered Reed the client manager position in April 2000. See id., Ex. A, at pp. 19, 42-44. The Bank's Board of Directors appointed Reed to serve as a Senior Vice President, and

---

[2]Defendant does not concede that Anaya made the alleged statements or representations. For the purpose of arguing its motion for summary judgment, however, Defendant assumes such representations were made. Likewise, for the purpose of this Court's summary judgment analysis, the Court resolves this factual controversy in favor of the nonmoving party. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). See also Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

Reed was offered $100,000 annual salary.[3] See id., Ex. D4 & D5. The parties agree that Reed accepted Bank of America's offer of employment with the understanding that he would serve as an at-will employee. See id., Ex. A, at pp. 11-12, 54. A letter confirming the terms of the employment offer explained that Reed was employed on an at-will basis, and both Bank of America and Reed could terminate employment with or without notice or cause. See id., Ex. B1. Reed signed the offer letter on April 19, 2000. On this same day, Reed also signed an Applicant Acknowledgment form, which again informed Reed that he would be hired as an at-will employee and could be terminated with or without cause. See id., Ex. A, at pp. 53-54; Ex. B2. Reed signed the following explanation of the terms and conditions of employment, as stated in the Applicant Acknowledgment form:

> I understand that this document is the complete agreement between the Bank and me, and takes the place of all prior oral and/or written agreements concerning the conditions, nature, tenure, and/or duration of my employment relationship with the Bank. Any and all such prior oral and/or written agreements, expressed or implied, are invalid, except any specific provisions set forth in prior written agreements stating my compensation and/or benefits.

Id., Ex. B2.

After Reed began employment with Bank of America, Anaya scheduled meetings with the product partners. See id., Ex. A, at p. 56. Product partners are responsible for sales and services in a specific area of expertise. Client managers refer transactions and clients to product partners who have an expertise that matches the client's banking needs. See id., Ex. C. Reed acknowledged in his deposition that during his employment with Bank of America, at least 10 product partners met with him and/or potential clients at various times in the Rio Grande Valley. See id., Ex. A, at pp. 24-25, 27-28, 31, 33, 35-36, 66-68.

Bank of America terminated Reed on March 15, 2001, when he did not meet certain performance goals. See id., Ex. C. These performance goals related to generating new loans, and reaching established annual expectations concerning

---

[3]Reed's beginning salary at Bank of America was $20,000 more than his final salary at Chase Bank. See Def's Motion, Ex. A, at p. 95.

3

commercial checking, treasury management fees, trade finance fees, foreign exchange fees, derivative fees, investment services fees, loaned fees, and business development calls, among other expectations. See id., Ex. A, at pp. 62-63, 67, 69-71, 73-74.

Plaintiff filed his original petition on April 17, 2002, in the 197th Judicial District Court of Cameron County. Defendant filed its Notice of Removal pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Having determined that complete diversity of citizenship exists between the Plaintiff and Defendant, and the amount in controversy exceeds the requisite $75,000, this Court has diversity jurisdiction to entertain this lawsuit.

## Legal Arguments of the Parties

Defendant argues in its Motion for Summary Judgment that Plaintiff has not and cannot produce evidence establishing the elements of fraudulent inducement because: (1) the alleged statements forming the basis of Plaintiff's fraudulent inducement claim are vague and "relate[ ] to future events, [which] does not qualify as a 'material representation,'" (2) the alleged statement was not false, (3) the declarant, Raul Anaya, "had no basis to know that the alleged statement was false," (4) Plaintiff admits Raul Anaya did not intend to deceive Plaintiff, and (5) under the circumstances, Plaintiff could not have reasonably relied on Raul Anaya's alleged statements. See Def's Motion for Summary Judgment, at p. 3 [Dkt. No. 11]. In addition, Defendant raises two affirmative defenses: (1) the National Bank Act preempts Plaintiff's claim, and (2) the Statute of Frauds bars Plaintiff's claim. See id.

Plaintiff argues in his Response to Defendant's Motion that Anaya,

> made numerous, specific, and very clear promises about the marketing strategy and support John Reed would receive from Bank of America product partners. Raul Anaya promised John Reed that Reed 'would receive all of the support from Bank of America personnel that I needed to do my job and reach my goals. I was promised that I would be assisted in my calling efforts by various product specialists who would prospect in the Rio Grande Valley and based on their calling efforts and my calling efforts, we would send referrals to each other. I was never given product specialist support that was promised from product partners who were supposed to actively market the Valley. I was also told that I would be given clients with whom to work. I was given four clients, and only one of those had any future possibility of doing any additional loan business with Bank of America.'

4

Pl's Response to Def's Motion, at p. 3 (quoting Reed's Interrogatory Answers) [Dkt. No. 15 & Ex. A].

## Summary Judgment Standard

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). See also Hunt v. Cromartie, 526 U.S. 541, 552 (1999). In addition, the evidence must be viewed in the light most favorable to the non-movant. See, e.g., Whelan v. Winchester Prod. Co., 319 F.3d 225, 228 (5th Cir. 2003); Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000). The party making a summary judgment motion has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings" and discovery documents and admissions that "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," Celotex Corp., 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 323).

If the moving party meets his burden, the non-movant, in order to survive summary judgment, then must designate specific facts beyond the pleadings showing there is a genuine issue to be determined at trial. See Fed. R. Civ. P. 56(e). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See also Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 325). Unsubstantiated assertions will not adequately cast doubt on material facts at issue. See Hopper v. Frank, 16 F.3d 92, 98 (5th Cir. 1994). Likewise, the non-movant must present more than a mere "scintilla" of evidence. See Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994). Summary judgment should be granted, however, "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." Little, 37 F.3d at 1071.

Summary judgment must be granted if Plaintiff, as the non-movant, "fails to make a showing sufficient to establish the existence of an element essential to [his] case on which [he] bears the burden of proof at trial." Group Dealer Servs., Inc. v. Southwestern Bell Mobile Sys., 2001 WL 1910565, at * 7 (W.D. Tex. Sept. 19, 2001) (citing Celotex Corp., 477 U.S. at 322-23 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")). In this case, Plaintiff has failed to sufficiently demonstrate there is a material issue of fact concerning the elements of falsity and an intention to deceive Reed at the time Anaya allegedly made the statement(s) at issue.

### Fraudulent Inducement Claim

In Texas a plaintiff must prove fraudulent inducement by producing evidence that proves the elements of common fraud. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990) (op. on reh'g), cert. denied, 498 U.S. 1048 (1991). The elements for fraud are (1) a material misrepresentation was made, (2) the representation was false, (3) at the time the declarant made the statement he knew it was false or "he made it recklessly without any knowledge of its truth and as a positive assertion (also known as scienter)," (4) the declarant made the representation with the intention that plaintiff would act upon it, (5) plaintiff acted in reliance on the representation, and (6) plaintiff suffered injury as a result of the fraudulent representation. Johnson & Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 929-30 (Tex. 1996). See also DeSantis, 793 S.W.2d at 688-89. As in this case, an alleged fraud may involve a promise to do a future act. The plaintiff, however, must present evidence that at the time the promise was made, the speaker had no intention of performing. See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1991). See also Spoljaric v. Pervcival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986) ("A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act.") (citations omitted).

At the outset, the Court notes that instead of presenting evidence Plaintiff argues in his response to Defendant's Motion for Summary Judgment that: "[o]f extreme

importance here is that whether a promise was made with the intent to deceive and with no intention of performing, is a question for the trier of fact because it so depends on the credibility of the witnesses and the weight to be given their testimony." Pl's Response, at p. 9 (citing Green v. Allied Interests, Inc., 963 S.W.2d 205, 209 (Tex. App. –Austin 1998, pet. denied)).

This response does not raise material issues of fact. Although an intent to deceive is often a question left to the trier of fact, if the Court were to accept Plaintiff's argument, fraudulent inducement would never be subject to summary judgment. See Green, 963 S.W.2d at 209 (citing Spoljaric, 708 S.W.2d at 434)). As Defendant points out, however, a fraudulent inducement claim is not specially shielded or immune from summary judgment. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996). Indeed, the Fifth Circuit has several times affirmed a district court's grant of summary judgment on a claim of fraud when the Plaintiff has failed to produce evidence that the Defendant had knowledge of falsity or an intent to deceive. See, e.g., Kansa Reinsurance v. Cong. Mtg. Corp., 20 F.3d 1362, 1375-76 (5th Cir. 1994). In Pruitt v. Levi Strauss & Co., the plaintiff admitted he did not believe the defendant intentionally misled him and the plaintiff failed to produce evidence demonstrating specifically the defendant's intent to deceive him. 932 F.2d 458, 462 (5th Cir. 1991) (abrogated on other grounds). The Fifth Circuit affirmed the district court's granting of summary judgment because the plaintiff had failed to sufficiently raise an issue of fact on the fraudulent inducement claim. Id. See also Ehrhardt v. Electrical & Instrumentation Unlimited of Louisiana, 220 F. Supp. 2d 649, 660 (E.D. Tex. 2002) (determining that despite defendant providing information to prospective employee that was later determined to be incorrect and insufficient, there was no evidence that defendant intended to deceive plaintiff).

As to the elements of fraudulent inducement specifically, Plaintiff has not offered any summary judgment evidence that Anaya's alleged statements were false when he made them. See, e.g., Shaboon v. Duncan, 252 F.3d 722, 735 (5th Cir. 2001) (denying Plaintiff's fraudulent inducement claim when no evidence was presented in the summary judgment response that defendant said anything false or that defendant had

7

knowledge that her statements were false when made); Hamilton v. Segue Software, Inc., 232 F.3d 473, 480-81 (5th Cir. 2000).  Nor does Plaintiff point to any evidence suggesting Anaya knew any representations about the support Reed would receive were false at the time Anaya made them, or that he had knowledge that Bank of America had no intention of providing support to Reed.  See Clardy Mfg. Co. v. Marine Midland Business Loans, Inc., 88 F.3d 347, 360 (5th Cir. 1996).  Even assuming Bank of America did not provide support to Reed, the Fifth Circuit has stated that "'[f]ailure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made.'" Id. (citing Airborne Freight Corp. v. C.R. Lee Enterprises, Inc., 847 S.W.2d 289, 294 (Tex. App. –El Paso 1992, writ denied)).

      In this case, there is undisputed evidence that Bank of America did perform, albeit in a way that fell short of Plaintiff's hopes and expectations.  See, e.g., Becker v. Nat'l Educ. Training Group, Inc., 2002 WL 31255021, at *6 (N.D. Tex. Oct. 7, 2002) (determining plaintiff failed to show defendant misrepresented terms of compensation in part because there was no evidence that the speaker represented that her explanation was as complete as the compensation plan itself).  Plaintiff acknowledged in his deposition that during his employment with Bank of America at least 10 product partners met with him and/or potential clients at various times in the Rio Grande Valley. See Def's Motion, Ex. A, at pp. 24-25, 27-28, 31, 33, 35-36, 66-68.  And, when Reed was asked whether there was anything any of the product managers could have done to help him reach his goals regarding the generation of treasury management fees, Reed stated, "[the product managers could have] been down here more frequently." Id., Ex. A, at p. 63.  But, Reed also acknowledged that some of the product managers did in fact assume an active role in soliciting and prospecting for business in the Rio Grande Valley.  For example, Reed stated that one product manager "was the type of partner that if the others had been, the – Valley would've been successful or [he'd have] been successful." Id., Ex. A, at p. 35-36. In addition, another product manager was actually "proactive" in visiting the Valley and prospecting business. Id., Ex. A, at p. 36-37.

Reed's comments about the various product managers, while expressing a discontent with their level of involvement in prospecting business in the Rio Grande Valley and providing Reed with business referrals, demonstrates that he in fact received at least some support from these product managers. The fact that the support he received did not live up to his expectations concerning their job performance does not demonstrate falsity or an intent to deceive. Id., Ex. A., at p. 35, 37. In addition, Reed stated in his response to Defendant's motion that "'[he] was given four clients, and only one of those had any future possibility of doing any additional loan business with Bank of America.'" Pl's Response to Def's Motion, at p. 3 (quoting Reed's Interrogatory Answers) [Dkt. No. 15 & Ex. A]. Reed's own sworn deposition testimony belies the claim that he received no product specialist support. He concedes that he was in fact given four clients. By Reed's own accounts, product partners came to the Valley, solicited business to varying degrees, prospected for business to some extent, and worked in different capacities with Reed. Reed has presented no evidence that Anaya's statements concerning product partner support were false.

Plaintiff likewise has failed to introduce any summary judgment evidence that Anaya possessed the requisite fraudulent intent when he made the alleged statements of misrepresentation. Most damning to Plaintiff's fraudulent inducement claim is that he assumed Anaya wanted him to succeed in his position with Bank of America, and Plaintiff explicitly states he *does not* contend that Anaya "purposely lied to [him]" at the initial stages of his recruitment, but only that "towards the end of [his] employment, [Anaya intentionally lied to him]." Def's Motion for Summary Judgment, Ex. A, at pp. 21-22. This admission precludes Plaintiff from demonstrating that Anaya made statements with the intent to deceive Reed and induce him to quit his job at Chase Bank and accept employment with Bank of America. See Pruitt, 932 F.2d at 462 (holding summary judgment was appropriate on fraudulent inducement claim when Plaintiff "admitted . . . that he did not believe that [defendant] deliberately misled him").

Even without such an admission the Court can infer from Anaya's subsequent acts that he never intended to deceive Plaintiff by falsely promising support and assistance by product managers. See Spoljaric, 708 S.W.2d at 434. After Plaintiff

9

began employment with Bank of America, Anaya set up meetings between Reed and his product partners. See Def's Motion for Summary Judgment, Ex. A, at pp. 56. Plaintiff's impression at that time was that Anaya was trying to assist Plaintiff in his transition from Chase to Bank of America. Id. at p. 57. At the time Anaya recruited Plaintiff to join Bank of America, Plaintiff believed Anaya wanted him to succeed in his new position. Id. at p. 21. Anaya facilitated Plaintiff's initial meetings with the product managers, and even arranged a meeting between Reed and Larry Zamponi, the other Rio Grande Valley client manager. Id., Ex. C, ¶ 8. At the very least, the evidence demonstrates that Anaya assisted in creating an environment that would facilitate some form of collaboration between the product managers and Plaintiff, even if the support system in place was not to Plaintiff's satisfaction. Plaintiff has not presented any evidence that Anaya intentionally misrepresented facts concerning the level of support Reed would receive from product managers.[4]

## Conclusion

The Court does not address the applicability of Defendant's affirmative defenses under either the Statute of Frauds or the National Bank Act because the Court addressed the merits of Plaintiff's claim and grants summary judgment in Defendant's favor. Plaintiff has failed to create a material issue of fact on the elements of fraudulent inducement, a requisite if he is to avoid summary judgment. Even Plaintiff's

---

[4]As further example, Plaintiff fails to adequately refute Defendant's argument that Reed did not *justifiably* rely on Anaya's alleged statements. Plaintiff states:
> Bank of America argues that John Reed is not entitled to rely on Raul Anaya's 'alleged statement to leave a position with Chase and join Bank of America . . . . ' (citation omitted). This evidence ignores the undisputed evidence that Mr. Reed did rely on Mr. Anaya's statements, and did quit his job at Chase to work for Bank of America, all based on Raul Anaya's and the bank's false promises of future performance.

Pl's Response to Def's Motion for Summary Judgment, at p. 6, ¶ 7. Plaintiff does not provide the Court with any evidence, or even legal argument, discussing why it is that Reed's reliance would be justifiable, as opposed to merely actual, in light of a merger clause in the Applicant Acknowledgment form. See, e.g., Beijing Metals & Minerals Import/Export Corp., 993 F.2d 1178, 1186 (5th Cir. 1993); Clardy Manuf. Co., 88 F.3d at 360 (stating that reliance must be justifiable based on the circumstances and individual characteristics and abilities of the person relying on the representations).

10

Supplemental Response to Bank of America's Motion for Summary Judgment, which included Raul Anaya's deposition testimony, does not contain evidence defeating summary judgment on the elements of falsity or an intent to deceive. The Court is under no duty pursuant to Federal Rule of Civil Procedure 56 to "'sift through the record in search of evidence' to support [Plaintiff's] opposition to the motion for summary judgment." Liszt v. Karen Kane, Inc., 2001 WL 739076, at * 7 ( N.D. Tex. June 26, 2001) (citing Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)). Indeed, Plaintiff is obligated to bring the Court's attention to specific evidence in the record and to demonstrate how the evidence presented supports his fraudulent inducement claim. See Ragas, 136 F.3d at 458. Because Plaintiff has failed to do this on at least two of several necessary elements, the Court **GRANTS** Defendant's Motion for Summary Judgment [Dkt. No. 11]. In addition, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment on Defendant's Affirmative Defenses [Dkt. No. 18].

The Court **DENIES** as moot Plaintiff's Motion to Withdraw Joint Pretrial Order [Dkt. No. 28].

DONE at Brownsville, Texas, this 28th day of July, 2003.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Hilda G. Tagle
　　　　　　　　　　　　　　　　　　United States District Judge